720 F.2d 626
 Donald W. COYER and Fred L. Engle, d/b/a Resource Service
Company, Plaintiffs-Appellants,
v.
James G. WATT, Secretary of the Interior, United States
Department of the Interior; Alfred L. Easterday; J. Roe;
and Wyoming State Office, Bureau of Land Management, United
States Department of Interior, Defendants-Appellees.
 No. 81-1415.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 4, 1983.
Rehearing Denied Nov. 28, 1983.
 
 Wayne E. Babler, Jr., Quarles & Brady, Milwaukee, Wis. (Thomas W. Ehrmann, Milwaukee, Wis., David B. Kern, Jerome F. Statkus, Cheyenne, Wyo., Quarles & Brady, Milwaukee, Wis., and Horiskey, Bagley & Hickey, Cheyenne, Wyo., with him on the briefs), for plaintiffs-appellants.
 Morton J. Schmidt, Morton J. Schmidt & Associates, Ltd., Milwaukee, Wis., for defendant-appellee Alfred L. Easterday, and Janet Steckel, Dept. of Justice, Washington, D.C. (Anthony C. Liotta, Acting Asst. Atty. Gen., Washington, D.C., Charles E. Graves, U.S. Atty., and Francis Leland Pico, Asst. U.S. Atty., Cheyenne, Wyo., and Robert L. Klarquist and Robert D. Clark, Attys., Dept. of Justice, Washington, D.C., with them on the briefs), for defendants-appellees.
 Before DOYLE, McKAY and SEYMOUR, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 The plaintiffs appeal the district court order affirming the ruling of the Interior Board of Land Appeals (IBLA) which rejected plaintiffs' first Drawing Entry Card (DEC) for failure to comply with 43 C.F.R. Sec. 3102.7 (1970). This is a regulation which has been issued by the Department which reads as follows:
 
 
 2
 A signed statement by the offeror that he is the sole party in interest in the offer and the lease, if issued; if not he shall set forth the names of the other interested parties. If there are other parties interested in the offer a separate statement must be signed by them and by the offeror, setting forth the nature and extent of the interest of each in the offer, the nature of the agreement between them if oral, and a copy of such agreement if written. All interested parties must furnish evidence of their qualifications to hold such leased interest. Such separate statement and written agreement, if any, must be filed not later than fifteen days after the filing of the lease offer. Failure to file the statement and written agreement within the time allowed will result in the cancellation of any lease that may have been issued pursuant to the offer.
 
 
 3
 Don Coyer entered into a service agreement with the Resource Service Company (RSC), which is a filing company founded in 1973 by Fred L. Engle, which submits non-competitive oil and gas lease offers on behalf of its clients pursuant to a standard service agreement which provides in pertinent part as follows:
 
 
 4
 If I am successful in a drawing, I hereby authorize you to act as my sole and exclusive agent to negotiate for me and on my behalf ... any right I obtain by reason of being successful in a drawing for the best price obtainable by you. Any final negotiated price is subject to my approval. If you have successfully negotiated a sale ... I hereby agree to pay you for your services in accordance with the schedule detailed below. [The scheduled fees ranged from twelve to sixteen percent depending upon the amount of the sale price. A similar schedule existed for overriding royalty payments, if any, negotiated for the client.] This agency to negotiate shall be valid for a period of five (5) years.
 
 
 5
 Donald Coyer, as we have noted, entered into this service agreement on January 5, 1977. On January 13, 1977, fearful that its service agreement might constitute an improper undisclosed interest under 43 C.F.R. Sec. 3102.7, RSC filed a disclaimer with the BLM which stated in pertinent part:
 
 
 6
 I, Fred Engle, d/b/a Resource Service Company, do hereby state and aver that I do hereby waive and renounce my exclusive agency which I may have by reason of said service agreements with said offerors from and after this date.
 
 
 7
 The disclaimer also provided that in the event the brokerage provision in the service agreement was deemed not to create an interest in RSC, the disclaimer was null and void. It was hoped that this disclaimer would eliminate the contested provision and avoid RSC's having to renegotiate a thousand agreements already in existence. Engle also agreed to notify each of RSC's winning clients that RSC disclaimed its brokerage right under the service agreement. The BLM agreed to accept the disclaimer, but warned RSC that the validity of the document was subject to review by the IBLA.
 
 
 8
 In May 1977 Coyer's DEC was drawn first in a Wyoming lottery. Alfred Easterday, the second drawee, filed a protest challenging Coyer's qualifications to be granted a lease. The BLM dismissed Easterday's protest finding that, although the service agreement created an interest in RSC which was not properly disclosed, the disclaimer cured the defective DEC. Easterday appealed the ruling to the IBLA. Although notified of the appeal, neither Coyer nor RSC participated in the appellate proceeding. On March 22, 1978, the IBLA reversed the BLM finding and held RSC's disclaimer ineffective to cure Coyer's DEC because the disclaimer had not been communicated to Coyer prior to the drawing and because Coyer had not given any consideration to RSC for the disclaimer.
 
 
 9
 Coyer thereupon filed a complaint in the district court in which he sought review of the IBLA's decision. The court determined that the administrative record was insufficient to permit adequate review. As a consequence, the case was remanded to the BLM for further proceedings. An administrative law judge (ALJ) conducted a hearing in which all parties participated. The ALJ determined that the disclaimer was ineffective to cure RSC's undisclosed interest. The ALJ's findings were adopted by the IBLA. Coyer v. Easterday, 50 IBLA 306 (1980).
 
 
 10
 The case was again appealed to the district court. Cross motions for summary judgment were filed. After conducting an evidentiary hearing, the court granted Easterday's motion finding that the IBLA's ruling was not arbitrary, capricious, an abuse of discretion or contrary to the law. This appeal followed.
 
 
 11
 WHAT IS THE EFFECT OF A DISCLAIMER?
 
 
 12
 In a case between RSC customers and the government, involving facts virtually identical to those here, the District of Columbia Court of Appeals held that RSC's disclaimer was sufficient to eliminate any impermissible or undisclosed interest in the lease of a first drawee. Lowey v. Watt, 684 F.2d 957 (D.C.Cir.1982).[1]
 
 
 13
 The opinion of the District of Columbia Court of Appeals, which was written by Judge Wright, held that RSC's disclaimer was a reasonable effort to protect itself and its clients in the face of uncertain regulatory requirements.
 
 
 14
 Judge Wright held that the action taken by RSC is consistent with the purposes of the non-competitive leasing program and with basic principles of contract law. The non-competitive leasing program represents an effort to provide equal access to oil and gas leases.
 
 
 15
 The regulations governing the program do not prescribe any particular method for waiving impermissible interests before applications are filed. The District of Columbia Court of Appeals held:If we were to hold, as a matter of common law, that a filing service's reasonable efforts to cure a defect in its contracts with its clients were insufficient, our decision would not only penalize blameless individuals like the individual appellants in these cases, but it would have a deleterious effect on the program as a whole.
 
 
 16
 Lowey, supra, at 976.
 
 
 17
 Filing services would be forced to take costly precautions, effectively excluding all but the wealthy from using this egalitarian program.
 
 
 18
 Contract law principles also support a finding that RSC's "amendment and disclaimer" effectively terminated any interest it may have had in its customers' leases. The Restatement (Second) of Contracts Sec. 89 (1981) provides:
 
 
 19
 A promise modifying a duty under a contract not fully performed on either side is binding
 
 
 20
 (a) if the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made....
 
 
 21
 Comment b to Section 89 explains that the "fair and equitable" standard contemplates both the absence of coercion and a "demonstrable reason for seeking a modification."
 
 
 22
 The District of Columbia Circuit properly held that the circumstances surrounding RSC's disclaimer of its right to enforce its exclusive sales provision fit RSC's action squarely within this legal principle. Neither RSC nor its clients anticipated that the provision might undermine the clear purpose of the contract. Indeed to reach a result other than that which has been indicated would place a heavy burden on the clients and it would be unjustified. RSC's unilateral waiver of its rights was the most speedy and cost-efficient way to protect the interests of its clients. The need for the change was clear, and RSC was certainly not coerced into relinquishing its rights under the contract. Its formal unilateral modification is thus binding, and does away with any interest the clause might have conveyed to RSC in leases obtained by RSC's clients.
 
 
 23
 It is true that this court is not bound to follow the ruling of the District of Columbia Circuit but we find that the Lowey case is persuasive and should be followed and that the interests of all the parties are served thereby.
 
 
 24
 Thus the case should be reversed and remanded to the district court for action consistent with this opinion.
 
 
 
 [1]
 The government, in Lowey, petitioned for rehearing and rehearing en banc. Both petitions were denied. According to counsel for the government in the case sub judice, the government chose not to petition for certiorari in Lowey